AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One (1) Black IPHONE cell phone (with no visible serial number or IMEI number) | Case No. 21-3288 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before ___1-6-22___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☒ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __12-23-21 @ 11:11 AM__     _M Morrissey_
                                                                                      *Judge's signature*

City and state: <u>Phoenix, Arizona</u>     <u>Honorable Michael T. Morrissey U.S. Magistrate Judge</u>
                                                                      *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Black IPHONE Cellphone (with no visible serial numbers or assigned International Mobile Equipment Identifier (IMEI) number)," belonging to Luis Antonio CORTES-Lopez. (hereafter the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, that relate to violations of Title 8, United States Code Section 1324, including:

   a. All information related to the pickup, transportation of inadmissible aliens in the United States (including names, addresses, telephone numbers, location, or any other identifying information);

   b. All information related to any smuggling coordinators (including names, addresses, telephone numbers, location, or any other identifying information);

   c. All bank records, checks, credit card bills, account information, or other financial records;

   d. All information regarding the receipt, transfer, possession, transportation, or use of alien smuggling proceeds;

   e. Any information recording schedule or travel;

   f. Evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

   g. Contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos;

photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>One (1) Black IPHONE Cell Phone (with no visible serial number or IMEI number) | Case No. 21-3288MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
  ☒ evidence of a crime;
  ☐ contraband, fruits of crime, or other items illegally possessed;
  ☒ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. §1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Agent Patt**

  ☒ Continued on the attached sheet.
  ☒ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Marcus Shand /MS/

DEREK D PATT  Digitally signed by DEREK D PATT
Date: 2021.12.23 08:48:06 -07'00'
*Applicant's Signature*

Derek Patt, Border Patrol Agent
*Printed name and title*

Sworn telephonically and electronically signed on:
Date: 12-23-21 @ 11:11 A.M.

M Morrissey
*Judge's signature*

City and state: Phoenix, Arizona

Honorable Michael T. Morrissey, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Black IPHONE Cellphone (with no visible serial numbers or assigned International Mobile Equipment Identifier (IMEI) number)," belonging to Luis Antonio CORTES-López. (hereafter the "SUBJECT CELLULAR TELEPHONE") The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, that relate to violations of Title 8, United States Code Section 1324, including:

   a. All information related to the pickup, transportation of inadmissible aliens in the United States (including names, addresses, telephone numbers, location, or any other identifying information);

   b. All information related to any smuggling coordinators (including names, addresses, telephone numbers, location, or any other identifying information);

   c. All bank records, checks, credit card bills, account information, or other financial records;

   d. All information regarding the receipt, transfer, possession, transportation, or use of alien smuggling proceeds;

   e. Any information recording schedule or travel;

   f. Evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

   g. Contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos;

photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Derek D. Patt, being first duly sworn, hereby deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. I am currently employed by the U.S. Customs and Border Protection, Office of Border Patrol, and have been since January 5, 2009. I completed the Border Patrol Academy in May of 2009, where I received instruction in constitutional law, immigration law, Criminal law, and in federal/civil statues. I have also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States.

3. During my experience as a Federal Agent, I have been the Case Agent for numerous criminal cases such as alien smuggling, criminal alien cases, and drug smuggling. I have worked directly with several AUSAs in these criminal cases, from gathering evidence to assisting in trials.

4. Since November 2021, I have been assigned as a Prosecution Agent for the Casa Grande Border Patrol Station. On several occasions, I have received and have been exposed to advanced training to improve my investigative and analytical skill sets. As a Prosecution Agent, I have sworn in numerous criminal complaints, and have been the seizing agent for many objects relating to criminal cases.

5. The statements contained in this Affidavit are based on information derived from my personal knowledge, training, and experience; information obtained from the

knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits.

6. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all the relevant facts known to law enforcement officers.

## LOCATION OF THE SUBJECT CELLULAR TELEPHONE

7. The SUBJECT CELLULAR TELEPHONE is a Black IPHONE cellular telephone with no visible serial numbers or assigned International Mobile Equipment Identifier (IMEI). The SUBJECT CELLULAR TELEPHONE was seized incident to arrest of Luis Antonio CORTES-Lopez on November 30, 2021 and has remained in the custody of the USBP since the date of its seizure.

8. The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

9. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of USBP.

## BASIS FOR PROBABLE CAUSE

10. On November 29, 2021, Border Patrol Agent Javier Cortes, was working the United States Border Patrol immigration checkpoint located on Federal Route 15 off the Tohono O'Odham reservation.

11. At approximately 6:30 p.m., Luis Antonio CORTES-Lopez presented for inspection at the FR-15 checkpoint in a silver Honda Accord with the license plate Arizona B0A3ZC. He was referred to secondary inspection because he had a substantial amount of brush in the floorboards of his vehicle.

12. In secondary, CORTES-Lopez admitted to dropping off undocumented non-citizens before pulling up to the checkpoint. CORTES-Lopez admitted to being recruited to pick up undocumented non-citizens by an individual he named Juan Castillo. CORTES-Lopez was communicating with Juan Castillo via Facebook and WhatsApp and provided the location of where CORTES-Lopez was told to pick up the undocumented non-citizens.

13. Border Patrol Agent J. Cortes asked for consent to look at CORTES-Lopez's phone. CORTES-Lopez agreed and provided information on the contact information of the facilitator, Juan Castillo, and the conversation that CORTES-Lopez had with Juan Castillo. After providing the information, CORTES-Lopez was released from the Border Patrol Checkpoint.

14. At approximately 11:12 p.m., the Casa Grande Disrupt Agents observed the same silver Honda Accord with the license plate Arizona B0A3ZC pass them at approximately mile marker 14 traveling southbound on Federal Route 42. At approximately mile marker four the vehicle applied it brake lights and turned around.

15. Stanfield road turns into Federal Route 42 on the Tohono O'Odham Indian Reservation and is approximately 27 miles long. There are two small and remote villages that are adjacent to this road. The Tohono O'Odham Indians require any non-tribal individuals to get permission to travel on this part of the reservation. Based on the elevation of the land, you can see vehicle headlights and taillights at far distances during the night. Based on my training and experience, and that of other agents, human smugglers commonly utilize the Stanfield exit and drive South to make a loop on Federal Route 42 to pick up individuals that walked in the desert to avoid the Federal Route 15 checkpoint.

16. At approximately 11:35 p.m., at approximately mile marker 20, Border Patrol Agent Michael Dolan pulled behind the Honda Accord and attempted to stop the vehicle with his emergency lights and sirens. The Honda Accord continued driving North and did not stop. Border Patrol Agents attempted to use Controlled Tire Deflation Devise

(CTDD) to stop the vehicle but were unsuccessful. Border Patrol Agent M. Dolan terminated the pursuit at 11:51 p.m. and advised Pinal County Sheriff's Office the last location and direction of the silver Honda Accord.

17. At approximately 12:14 a.m. on November 30, 2021, Border Patrol Agent Guillermo Perez spotted the silver Honda Accord traveling east on State Route 84 at mile marker 174 with a flat tire. Border Patrol Agent G. Perez relayed the information to Pinal County Sheriff's Office.

18. Pinal County Sheriff's Deputy Dos Santos, with the assistance of Border Patrol, was able to catch up to the silver Honda Accord and conducted a traffic stop on the vehicle on N. Crane Street, just south of Cottonwood Ln. The driver of the silver Honda Accord was Luis Antonio CORTES-Lopez. CORTES-Lopez had an additional seven occupants inside the vehicle that were later identified as undocumented non-citizens. Luis Antonio CORTES-Lopez and the seven undocumented non-citizens were arrested and transported to the Casa Grande Border Patrol Station for further processing. The silver Honda Accord with license plate Arizona B0A3ZC and SUBJECT CELLULAR TELEPHONE were seized for violations of 8 USC 1324(a)(1)(A)(ii), Transportation of Illegal Aliens.

19. After arriving at the Casa Grande Border Patrol Station, CORTES-LOPEZ was read his Miranda rights. CORTES-LOPEZ invoked his Miranda rights.

20. Based on my training and experience, and that of other agents, human and narcotic smugglers commonly utilize cellphones to communicate between drivers and smuggling coordinators. This is current common trend to guide human and narcotic smugglers to a specific location north of the International Boundary Fence separating Mexico and the United States, for illegal alien or narcotics pickups in remote desert areas or roads with or without identifiable mile markers. Based on my training and experience, and that of other agents, after smugglers pickup undocumented non-citizens at these

locations, they transport them to another location, often directed on cellphones, further within the United States, to assist their continued illegal presence in the United States.

21. CORTES-LOPEZ had on his person at the time of arrest the SUBJECT CELLULAR TELEPHONE and confirmed during the property inventory that the SUBJECT CELLULAR TELEPHONE belonged to him. As noted above, CORTES-LOPEZ admitted to utilizing the SUBJECT CELLULAR TELEPHONE to coordinate alien smuggling activities with co-conspirators.

## ITEMS TO BE SEIZED

22. Based upon the facts contained in this Affidavit, I submit there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

23. Based on my training, education, and experience in Alien Smuggling Operation (ASO) investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common amongst individuals involved in ASOs. Individuals involved in alien smuggling activity tend to:

    a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

    b. Collect data pertaining to other co-conspirators involved in alien smuggling activity;

    c. Possess and maintain records reflecting bank transactions and/or money transfers;

    d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the three phones);

    e. Correspond with and/or meet with other alien smuggler associates to

share alien smuggling information and/or materials;

  f. Retain correspondence from other alien smugglers co-conspirators relating to alien smuggling activity; and

  g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smuggler have been in contact and/or conducted alien smuggling activity.

### DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

  24. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

  25. I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

  a. I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

  b. Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone

numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

      c.    Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

26.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

      a.    Data in a cellular telephone can provide evidence of a file that was

7

once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created.

The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

    c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

    d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  27. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I

am applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

28. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. I submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of alien smuggling, 8 U.S.C. § 1324, are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

**DEREK D PATT** Digitally signed by DEREK D PATT
Date: 2021.12.23 08:48:46 -07'00'

Derek Patt
Border Patrol Agent
United States Border Patrol

Electronically signed and telephonically sworn to me this 23 day of December 2021.

*M Morrissey*

HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge

10